if you're ready. May it please the court, counsel, Mike. First let me just say it's truly a pleasure and an honor to be here. I'm reminded of my own optimism and relative lack of cynicism in my days in law school and so I'm happy, very happy to be here. On July 16, 2008, 26-year-old Colin Spradling, a father to a young son, brother, a son himself, was shot and killed by Little Rock Police Department officers trying to execute an ill-conceived warrantless arrest of him while he was at his girlfriend's mother's home. Now, as is the custom in Little Rock, the Little Rock Police Department did an in-house investigation and what that means is that rather than ship it to an outside agency where independence could be assured or at least promised, they kept it in-house so that all the questioning and all the evidence gathering would be done by friends, colleagues, and coworkers of the shooters. Now, Detective Chuck Ray was the lead investigator in this matter and in that role he was charged with one thing above all others and that is to find the truth, to assess the evidence fairly, to question the witnesses impartially, and to find the truth above all. I deposed Detective Ray in 2017 and after almost 10 years of lies, obfuscation, and fraudulent concealment, he finally admitted the truth to me. He was charged with one thing above all others and that is to find the truth, to question the witnesses impartially, and to question the witnesses impartially, and to find the truth above all others. Question, is it possible that a person who didn't burglarize the home was shot and killed by officers that day? Answer, yes. That's found in the appendix at page 660, 660 and 661. Counsel, you know, we have pretty limited time for oral argument. This issue that's appealed here is the grant of dismissal based on statute of limitations. Very astute, Judge. Yes, sir. I think it's important to show those operative facts to show why the filing of this case, the toll that there should have been a tolling of the operation of the statute. And, Your Honor, I'm just about to get there, I assure you, right now. I lay this foundation and give you this predicate because really it lies at the heart of the statute of limitations issue. That admission that I got from Detective Ray, quite simply, is at the heart of the statute of limitations issue. That is the tragic seed, that admission and that fact is the tragic seed from which this fraudulent tree grew. Esteemed bench, the bottom line is this. The officers on that day did not follow protocol. They did not follow policy. They were lazy. They did not get a warrant. They went in gangbuster style and they made a terrible, terrible mistake. They killed an unarmed man and that person wasn't even responsible for the act that they were allegedly investigating. Now, that act had to be handled. That act had to be covered up or somehow managed by the officers. And that is why we are here today. Indeed, an innocent person was killed that day, and rather than accept the tough responsibility that comes with it, these officers and several others all conspired to conceal these facts. And thus the statute of limitations ran, despite my client's due diligence in trying to find answers. Counsel, I want to ask you about the various claims you have here. You have several claims on excessive force, and those are subject to sort of the fraudulent concealment. But I want to understand the civil conspiracy claim and exactly what the allegations of that are, because they could be different, but I can't really tell based on what I have before me. Yes, sir. So, indeed, we do allege excessive force, unjustified shooting. But the thrust of, in fact, the express letter of the order that we're here appealing is confined merely to the statute of limitations issue. So for the purposes of this argument, I think it's fair to assume that the shooting was unjustified, or that the shooting was unjustified, and that my client, despite his due diligence, didn't file it within the requisite three-year period. So the conspiracy is not just among the defendants themselves, but also among the various investigators who did the in-house investigation. And I will point, you know, on appendix page 152 to 154, I give a laundry list of about 30 different ways that this matter was concealed and that's evidence of the conspiracy. Before you get back there, I'm just trying to figure out what acts underlie the civil conspiracy claim and how they're different from the excessive force. The excessive force gets the shooting. Sure. And the unjustified shooting. The civil conspiracy may get at something. I'm just trying to figure out exactly what acts underlie the civil conspiracy. Well, for the purposes of today, I'm really going to focus on two of the big ones. Again, that list I think that I just referenced shows a lot of different conspiratorial acts that were positively, affirmatively engaged in by the officers. But let's just take a look real quick at the statement of the eyewitness, Christina Hatfield. Christina Hatfield was an eyewitness to the shooting. It happened in her backyard, in her kind of place of solitude, right near the patio. And she went in front of the – she was, you know, swept out of her place barefoot, wouldn't let her go back in her house, and she gave a statement to the officers. And she told them quite clearly that, you know, when they're asking questions of her and what she saw, she said – and they're, you know, they're basically trying to lead her to admit that they – that Colin had a gun on his person, which she wouldn't do. She said during the statement, I did not know that Colin had a gun on his person. That statement was transcribed in-house by LRPD, presumably transcribers, never come forward, but that was transcribed falsely to reflect that she said, I did know he had a gun on his person. Let that sink in for just a minute. You have an eyewitness statement that gives a – an eyewitness who gives a statement that is exculpatory of the victim, and it is quite simply morphed into one that is discriminating of that victim. This is not a ticky-tack, didn't cross your T, didn't dot your I. This is – This witness spoke to the plaintiff and advised the plaintiff of their view of the events of that evening prior to the expiration of the statute of limitations? A conversation was not had, but a letter was sent. And the letter is actually part of the basis of the court's granting of summary judgment, which is confusing on a couple of different levels. First of all, Ms. Hadfield did tell my client that she believed the shooting was unjustified prior to the expiration of the statute of limitations. That was her opinion to him. Like countless other police-involved shootings, some people think it's unjustified. It doesn't make it so. But when he consulted the official file, the one that is controlling in this matter, the one that he shipped around to various attorneys, to the FBI, to the Department of Justice, it was in complete contrast to what she was telling him her opinion of the shooting was, and that is it reflected her belief that the shooting was justified. So that's one aspect of it. Let me ask you this. I want to kind of get back a little bit to my earlier question, but I'm going to ask it this way. For all the claims you have in the complaint, are you relying on equitable tolling, or are there actual acts in any of those counts that happened within the statute of limitations? Do you understand my question? I'm afraid I don't quite understand your question. So my question is, for all of the claims, I think you have six counts in your complaint. Yes. Are you relying on equitable tolling for timeliness, or are there some acts, wrongful acts, that actually occurred within the statute of limitations where you don't need equitable tolling? Well, we believe that the statute was told because of the fraudulent concealment. And so to answer your question directly, all of our, you know, you can't have a conspiracy charge, for instance, without a constitutional violation at the heart of it. So that constitutional violation, the statute ran on that, but it was because of the furtive acts and the positive and affirming, affirmative concealment of the defendants. So all of the allegations that we have, the counts that we have, are piggybacked under the theory of fraudulent concealment. Okay. So they're all fraudulent. That's very helpful. All fraudulent concealment. Yes, sir. Thank you. You know, the defendants admit that this was a mistake in the transcript. It was just a simple mistake. You know, oops, a mistake. And yet no one's come forward, no one's identified the transcriber. The transcriber hasn't submitted an affidavit. As law students even know, when you have a summary judgment issue and there's a general issue of material fact, the tie goes to the nonmovement. So where they say that it's a mistake and they don't present anybody to back that up, and we say that it's intentional and we show supporting evidence of that, the tie goes to us. There's no way that the Court below should have discounted that very important aspect of this. Well, it seems to me that the issue in the case is that for purposes of a motion to dismiss, we're not even a summary judgment. A motion to dismiss, we have to assume all well-put facts are true. And so we have to assume that there was fraudulent concealment. So let's start with that basis. But the district court said, well, even if you assume there's fraudulent concealment, you had plenty of facts. In fact, you had filed a prior lawsuit and non-suited it. You had multiple opportunities and, in fact, did know about the bad conduct that you're now alleging. So where did the district court go wrong in that analysis? Respectfully, I'm not sure that I agree with that rendition of the Court. You know, we had survived two motions to dismiss and two summary judgment motions. So the Varner analysis, we've already achieved. What I can tell you is this. The first lawsuit that we filed was after the statute of limitations. And I filed that, and then I took the deposition of the Hatfields. I was then learning facts. I non-suited that case because I wanted to revamp the complaint so that it was impervious to dismissal because we were pleading fraudulent concealment. So, you know, I think that what we're talking about here essentially is the Court trying to shift the burden, not just the FOIA burden, because let's not forget, there was also a video that was withheld. The FOIA representative in this instance is the uncle of one of the shooters that came across his desk. Ms. Hatfield's FOIA request came across his desk. And what do you know? When it was responded to, there was no video in there. The video has an admission by an eyewitness saying that Collin was pinned to the ground with his arms behind his back when he was shot. That is a contemporaneous utterance by an eyewitness, and it was withheld from the file. That is the case. Scalia. The actual video was not turned over, but the existence of the video was known. Is that correct? Carvin. Judge, there was a tiny, scant reference to a video, but here's what's important. Imagine that this was a citizen-on-citizen homicide, and there was and the citizen suspect said this was self-defense. I had to shoot the other guy because he was pulling a gun toward me. And that was investigated by the Little Rock Police Department. Do you think if there was a video of an eyewitness saying this guy was pinned with his arms behind his back that that wouldn't have been used to challenge that suspect's account? And yet in this police-involved shooting investigation, not one of these officers was ever asked about that video. No one ever said, hey, we've got a video here of a kid who said that he was pinned with his arms behind his back. What do you say about that, shooter number one? How about you, shooter number two? Shooter number three, how can your story in this video be the same? So there was a scant mention as to the existence of the video, but it did not at all talk about the substance of the video, which we think is quite significant. Quite simply, it doesn't pass the smell test, Judge. And it's unbelievable to me that these – this conduct can be proven and can be established through painstaking depositions, and yet the onus is put on my client to somehow dig through the fraud, to dig through, and to put that onus on him is patently unfair. They control the facts, they control the evidence, they control everything. Counsel, you're in your rebuttal time. This is true, and I'm pointing to you. You can continue if you like or you can reserve. Thank you very much, sir. Thank you, Mr. Lowe. Ms. LaFever. Good morning, Your Honors. May it please the Court. My name is Amanda LaFever. I'm here on behalf of all the appellees at the appellate level. They were all defendants at the district court level. First and foremost, appellees acknowledge to the panel the tragic nature of this case. At no point in time do we not recognize that there was a loss of life that occurred on – in July of 2008. However tragic as that may be, the undisputed material facts in the – in this case support that the claims brought by Mr. Spradling were told by the applicable statute of limitations. The appellants in this case concede that absent fraudulent concealment, the three-year applicable statute of limitations to all of his claims bar all of the claims. Mr. Lowe, on behalf of Mr. Spradling, talks a great deal about the underlying facts with respect to the robbery that the officers were there to investigate, the shooting itself. However, we are here, as the panel recognized, strictly on whether or not the statute of limitations was barred by the existence of fraudulent concealment. I'd like to point the Court to a recent decision by the United States Supreme Court, Midland Funding, LLC v. Johnson, 137, Supreme Court, 1407, 2017, in which the U.S. Supreme Court acknowledged that the statute of limitations are not simply technicalities. They reflect strong public policy determinations that it's unjust to fail to put an Now, I think both sides agree and appellants concede that at the — as of the day of the shooting in July of 2008, Mr. Spradling knew that his son had been shot and killed by members of the Little Rock Police Department.  notified of that death, he had a letter from Christina Hatfield, who, as appellant repeatedly points out, was an eyewitness to the shooting in her backyard. He emphasizes the fact that she was an eyewitness. So you have an eyewitness who writes a letter to the appellant and says to him, point blank, I think your son was murdered. Well, he knew. He knew that there could be some funny business from the letter from Ms. Hatfield, but he didn't have the evidence to prove it, right? The evidence to prove it was in the video and some of the things that were withheld. So why doesn't that toll the statute of limitations? Because, after all, those were in the custody of the police department. He didn't know that they existed. Right, Your Honor. So you're referring to the MVR video of Officer Lundy and the audio of the interviews that were transcripted in the file. While the video is important, no doubt, the recording on the MVR audio to which appellees refer is a statement by Mr. Paul Hatfield, another eyewitness in the backyard, who, while he did say, comment about the location of Mr. Collins Spradling's arms, he also said, I knew he had a gun. I effing knew he had a gun. So I don't think that it's dispositive or proof such that it would prove the underlying Fourth Amendment violation, that the shooting itself is unreasonable. Why weren't those recordings made a part of the record that was handed over upon request? I'm sorry, Judge Smith. Why weren't those recordings made a part of the record that was given to the plaintiff when those records were requested? Okay. At the time that the Freedom of Information Act request was made, and I would like to point out that the request itself was actually made by Christina Hatfield. At no point in time did Mr. Spradling make any requests for documents prior to the filing of the lawsuit to the Little Rock Police Department. In 2008, the MVR recordings, those were not stored with the case file, the paper documents case file. So when someone, a citizen, would come into the LRPD and make a FOIA request for the case file, the case file clerk, in this case, Ms. Charlotte Warner, who submitted an affidavit in support of this in the record, she would make a copy of the paper documents and give those over. Are the recordings ever considered part of the report? They are currently, Your Honor, yes. But in 2008, the MVR videos, the statements that were taken by the police department, those were transcribed and the transcript is what was put into the actual case file, what was considered the case file at the time. So the transcript of the recording was turned over to the requester? A transcript of the statements that we're giving, not a transcript of the MVR video. The MVR video was not handed over. However, there are references in the case file that Mr. or Ms. Hatfield did receive and ultimately turned over to Mr. Spradling, to the MVR, and multiple instances and references to the recorded statements. So at that point, when he receives the file in early 2009, he's put on notice. And under Delano, if he's got inconsistent information or some suspicion that something is not right or that he hasn't been given the entire file or there's information that could be discovered, he has an obligation to do his due diligence. Suppose, though, suppose, though, you know, that you said the video really doesn't help, the audio doesn't help. But suppose we have the exact same facts we have here, except for one thing changes. On the video or the audio or whatever, the officer says, and it's overheard on the audio, I was having a really bad day. I knew he didn't have a gun, but I just shot him anyways. And that wasn't turned over. Would we have a different case than we have here, or is it the same result? And if it's the same result, why? I think it is the same result, Judge Stroth. And the reason why is that he has an obligation to do his due diligence. If he has put on notice that there are some inconsistencies, and here, as I said before, an eyewitness to the shooting has said to him, not just I don't think they had a, that it was unjustified, not just it wasn't reasonable, not just I don't think he had a gun. She said, I think your son was murdered in my backyard. I have made myself available to you. I have placed calls to the prosecuting attorney in the event that the criminal charges are going to be pursued against these officers. So he's got enough information that he could have filed the lawsuit. The question isn't whether he could have retained counsel or whether he was successful in retaining counsel or whether the case was more difficult to litigate for lack of these things or whether or not the lack of the video or the recorded statements makes some version of what happened more or less credible. These sorts of things go to the weight of the evidence in a trial setting. He was on notice about the existence of the lawsuit. But does that encourage government agencies, government actors to withhold evidence potentially? I mean, if you have the type of evidence that I just suggested where it's really inculpatory, I mean, it basically proves an excessive force claim, does that encourage the government actors to hold it back with the hope that maybe he has notice of his cause of action and therefore he won't sue within three years if I hold this particular video back or this audio back? Does it create perverse incentives? It could, Your Honor. It's possible. Anything is possible. I mean, in this case, and in particular, I would like to point out that the items that were withheld from the FOIA request, Mr. Spradling and the appellant has to show fraudulent concealment as to each defendant in this case. He mentioned, Mr. Lowe mentioned while he was up here that we don't have an affidavit from the transcriptionist, but affidavits from the defendants were submitted in which they stated under oath they were not the ones who transcribed the statement, they were not the ones who responded to the FOIA request. So to hold the officers and the defendants, the appellees in this case, responsible for conduct that they themselves did not even participate in, that does not operate to the toll of the statute of limitations. In addition to having the letter from Ms. Hatfield in which she pointed out the inconsistencies in which she voiced her belief about the nature, excuse me, of the shooting, within eight days of the shooting death of Colin Spradling, the Spradlings had retained counsel and opened an estate for the sole purpose of pursuing and investigating a wrongful death claim. So if eight days after the shooting death of Colin Spradling, the Spradlings have retained counsel and are looking for the purpose of investigating and filing a wrongful death action, it can't be said that they weren't aware that the cause of action for a Fourth Amendment violation or any of the other claims made in the complaint existed at the time. He was aware that the cause of action existed. He admits in his own affidavit that he submitted in response to the motion for summary judgment that we filed that he was aware of Ms. Hatfield's beliefs. He was aware that she didn't think it was reasonable. There's simply not sufficient – there's simply not enough – there are no disputed material facts such that this Court should do anything other than affirm the district court's finding that the statute of limitations was barred. Well, what do you say to your opposing counsel's argument, however, that you may be aware and I think, as he said, a lot of people think if their loved one is shot by police, it was unjustified. But you go to the file and you have a statement that is exactly contrary to what was actually said. The statement – she says he didn't have a gun. The statement says she did have a gun. And evidence is withheld. Why doesn't that factor into this? Just because you think you might have had a cause of action, you investigate. And if the evidence is withheld, why is that not fraudulent concealment? Well, Your Honor, a few things there. The statement that opposing counsel has referred to is the witness statement given by Christina Hatfield the day of the shooting at the Little Rock Police Department, in which we have admitted, conceded, that there was a mistake in the transcript in which she said, I know he did not have a gun, versus I know he did have a gun. However – and this is – I'm going to reference supplemental appendix page 130 is where the mistake occurs – Hatfield, but I mean, I did know he had a gun on him. However, a mere five lines before that, she says, somebody said, did you know he had a gun on him? And I said, of course not. I would have told you. I know I'm going to be out – I'm not going to be out there with my kids with a gun. So if you look at the entirety of Ms. Hatfield's statement to the LRPD the day that she gave it, there are multiple instances in her statement in which she says, he didn't have – I don't think he had a gun or I didn't know if he had a gun. It's one mistake within the entire statement. And if you look at the entire statement, plus coupled with her firsthand account in her letter where she says, he didn't have a gun or I didn't know he had a gun, I don't think that that mistake brings anything to the table. Did I answer your question, Judge? So if you go back to the elements of fraudulent concealment, the things that appellant must be able to show in order to get past our motion for summary judgment, he simply hasn't done so. As previously said, he had the letter from Ms. Hatfield. He had access to all three Hatfields. He had the 500-plus page case file in which there were references to the MVR. Officer Lundy gave a – Officer Lundy, the officer who was wearing the MVR that day, in his statement to the police that day, he says, yes, my MVR was on. It was recording. So the knowledge is there. You're put on notice. Delano says if you have a suspicion, if you have inconsistent accounts of what further, and that simply did not occur here. Moreover, with the affidavit presented by Mr. Spradling, he concedes that he went and sought legal counsel. The fact that – the mere fact that he's seeking legal counsel and has retained legal counsel indicates that not only could he have discovered that there is a potential cause of action, he did know there was a potential cause of action. The standard isn't whether he can prove the case. It's whether he can file the lawsuit. Counsel, can I ask you – I asked opposing counsel about this, the civil conspiracy claim. And it's not the focus of the case, but what I'm just trying to figure out is what acts underlie that and really whether or not there are any acts that happened within that three years. In other words, the nature of that claim seems to be different. So I'm just trying to figure out if that's subsumed in the same way with this fraudulent concealment stuff. Opposing counsel seems to say yes. Or are there some acts like withholding some of the evidence, mistranscribing that may have happened within the three-year statute of limitations? Your Honor, Appley's position is that there are no acts that occurred within the statute of limitations, that each claim, however delineated in the complaint or settled in the complaint. And I agree it is a little confusing at times trying to parse which acts are alleged with respect to a standalone conspiracy claim with respect to the Fourth Amendment claim versus the fraudulent concealment. They are conflated quite a bit. But, no, it is our position that all of the claims are barred by the applicable statute of limitations of three years. If there are no further questions, Your Honors, I'm just about out of time. Thank you. Roberts. I see none. Thank you, Ms. LaFever. Mr. Lowe, your rebuttal. Thank you. Just a couple of things to say. Counsel talked about the FOIA statute and referred to its current interpretation. At all times, the FOIA statute expressly includes video recordings. And that's important, because the failure to include video in the disclosure is an intentional act, because officers are presumed to know the law. Judge Strasse, you made a fantastic point about this basically a slippery slope. If this order is affirmed, what basically this Court will be allowing is this. You know, you can fraudulently conceal materials. You can fudge records. You can alter and damage video. But as long as you put a tiny little crumb in the file, tiny little crumb, you're going to be just fine. You're going to be just fine. Worst-case scenario, they find the crumb and they file within the loss of the statute, as is their right anyway. Best-case scenario, they miss it and the statute is blown. And you know what? They don't tend to catch those crumbs, because they're grieving their loss of their loved one. They don't really notice it through their tears. It absolutely shifts the burden over to the plaintiff to do the work of the government, which has a relatively higher level of sophistication in these matters. The shift, again, of the FOIA statute. They're the persons who know how to interpret FOIA, not my client and not Ms. Hatfield. Why should they have to make a special request for videos when videos are expressly contained in the statute? As to the fact of my client's awareness, yes, this is not a situation where he sat on his hands until the statute ran. He feverishly sought out attorneys and throughout the entire process. The problem is, is that he was shopping around a fraudulent file. Not only did he not catch the fraudulent concealment, but a half a dozen attorneys looked at the file and said, no, no, it's not going to work. She says he had a gun. So it was a defective file that he was unwittingly shopping around. He did his due diligence. The last thing I will say is this. This is about Collins-Bradley to be sure, but this is about something much bigger. This is about trust in our institutions and whether we can rely on the government to give us the straight truth, whatever it is. Esteemed defense, thank you so much for your time today. Roberts. Thank you, Counselor. The Court wishes to thank both attorneys for your presence before the Court this morning, the argument you have provided, the briefing you've submitted. We'll take your case under advisement. You may be excused.